**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-60808
Summary Calendar

THERESA LINER,

Plaintiff-Appellant,

versus

DAVOL, INC.,

Defendant-Appellee,

C.R. BARD, INC.,

Defendant.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:96-CV-283 BrR

February 11, 1999

Before KING, Chief Judge, BARKSDALE, and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Theresa Liner appeals the district court's decisions to grant defendants' motion in limine to exclude the proffered testimony of Dr. Richard Weiland and to grant defendant-appellee Davol, Inc.'s ("Davol") motion under FED.R.CIV.P. 50 to dismiss Liner's claim as a matter of law. Liner argues that the district court erred in excluding Dr. Weiland's testimony, and that as a result it erred in granting the Rule 50 motion. In the alternative, Liner contends that even if the district court correctly excluded Dr. Weiland's testimony, it should not have granted the Rule 50 motion because there was sufficient evidence from the testimony of Dr. Eric Wyble for the jury to

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR R. 47.5.4.

conclude the case in her favor. For the reasons set forth below, we AFFIRM each of the district court's decisions in this case.

## FACTUAL & PROCEDURAL BACKGROUND

On June 2, 1977, Liner underwent hernia repair surgery. To repair the hernia, the treating physician used Marlex Mesh -- a knitted, monofilament polypropylene mesh manufactured and sold by Davol.[1] After this surgery, Liner developed a staphylococcal infection which was cultured and determined to be a methicillin susceptible staph aureus infection ("MSSA"). The MSSA was successfully treated with antibiotics and the infection was cured.

After 1977, Liner had several other surgeries performed upon her, including a gastric bypass surgery in 1980 and sinus surgery in 1986. On March 16, 1994, Dr. Eric Wyble, a plastic surgeon, performed upon Liner a panniculectomy, a major radical operation in which a large abdominal pannus was excised. During the panniculectomy, Dr. Wyble removed portions of the Marlex Mesh (due to the repair work he was completing in those areas and not because of any problems with the Mesh) and found a walled-off pocket of fluid from which he drew a sample. This fluid was cultured and found to contain a methicillin resistant staph aureus ("MRSA"). The MSRA was treated with antibiotics and seemingly eradicated, and Liner was discharged on March 28, 1994. Liner subsequently had a flare-up of the MRSA, however, and underwent four surgeries throughout 1994 and 1995. During the last of these surgeries, Dr. Wyble removed all of the surgically removable mesh remaining in Liner, which included more of the Marlex Mesh.[2]

---

[1]Davol manufactured the Marlex Mesh in 1977, when Liner's hernia operation took place. In August 1980, defendant Bard, Inc. ("Bard") acquired all of the stock in Davol. The district court granted Bard's motion for summary judgment on the first day of trial on the ground that Bard was neither the manufacturer nor the seller of the Marlex Mesh at the time of Liner's operation, and therefore could not be liable merely as the parent corporation of Davol. Liner does not appeal the district court's decision to grant summary judgment as to Bard.

[2]Liner's doctors had also used another brand of mesh for a separate purpose. This second mesh has no bearing on this case.

Liner filed suit against the defendants in state court, alleging that the particular Marlex Mesh, as opposed to the underlying design of all Marlex Mesh, manufactured by Davol and implanted during her 1977 hernia operation was defective and resulted in her MRSA infection. The defendants subsequently removed the case to federal district court.

Prior to trial, defendants filed a motion in limine to exclude expert testimony by Dr. Eric Wyble and Dr. Richard Weiland regarding the defectiveness of the Marlex Mesh. The district court held the motion in limine under advisement until the testimony sought to be excluded was proffered at trial. On November 10, 1997, a jury trial began before the district court. After Liner took the stand, Dr. Wyble testified as to the surgeries he had performed on Liner during 1994 and 1995. Importantly, he did not testify regarding the manufacture of the Marlex Mesh -- rendering moot the portion of the defendants' motion in limine having to do with Dr. Wyble. The district court then heard defendants' motion in limine to exclude the proposed testimony of Dr. Weiland as an expert on Marlex Mesh. Outside the presence of the jury, the court heard a proffer of Dr. Weiland's testimony. The court subsequently granted the motion in limine to exclude Dr. Weiland's testimony. Liner's counsel then indicated that Liner had no further testimony regarding the alleged defectiveness of the Marlex Mesh, after which the defendant made a Rule 50 motion to dismiss Liner's claim as a matter of law. The district court granted this motion, and dismissed Liner's case.

## DISCUSSION

### I.

Liner first challenges the district court's decision to exclude the testimony of Dr. Richard Weiland. We review district court rulings on the admission of expert testimony for abuse of discretion. See General Elec. Co. v. Joiner, 522 U.S. 136, ----, 118 S.Ct. 512, 517 (1997); see also Moore v. Ashland Chemical, Inc., 151 F.3d 269 (5th Cir. 1998)(en banc)(petition for cert. filed).

At the request of plaintiff's counsel, Dr. Weiland reviewed the plaintiff's medical records, promotional materials including package inserts issued by defendant Davol relating to the Marlex

Mesh, and academic literature given to him by plaintiff's and defendants' counsel regarding Marlex Mesh. On this basis, Dr. Weiland testified that the Marlex Mesh implanted in the plaintiff was defective. Upon questioning, he explained that he believed the mesh did not stay inert in the face of infection but instead harbored and caused infection. He also pointed out that the mesh lost its tensile strength -- basically tore apart -- during the 1990s.

We cannot find that the district court abused its discretion when, after careful review, it excluded this testimony. First, Dr. Weiland is not an expert on Marlex Mesh. Before a person can testify as an expert, he must be "qualified as an expert by knowledge, skill, experience, training, or education." FED. R. EVID. 702. Admittedly, Dr. Weiland is an emergency room physician and specialist at Gulfport Memorial Hospital, and is board certified in family medicine, emergency medicine, and sports medicine. However, Plaintiff's counsel tendered him as an expert in Marlex Mesh, and specifically upon the issue of whether the specific Marlex Mesh implanted in Liner in 1977 was defective. See Rosen v. Ciba-Geigy Corp., 78 F.3d 316, 318 (7th Cir. 1996) (distinguishing between "genuinely scientific evidence" and "unscientific speculation offered by a genuine scientist"). Dr. Weiland has only a limited amount of personal clinical exposure to Marlex Mesh. He has encountered patients who have had Marlex Mesh implanted in them and have also had wound infections. However, he has never used any sort of mesh in any type of surgery, has never done a hernia repair, and has never removed any type of mesh including Marlex Mesh. In addition, he has never personally done any scientific study on Marlex Mesh, and in fact has never conducted any research into the academic literature regarding Marlex Mesh outside the context of this lawsuit. Furthermore, his review of the academic literature regarding the Marlex Mesh was confined to the medical articles provided to him by the attorneys in this case. Given the "very wide discretion a district court possesses in determining the qualifications of an expert witness," see Ellis v. K-Lan Co., 695 F.2d 157, 162 (5th Cir. 1983), we cannot say the court below abused its discretion in excluding a witness whose claim for expertise derives almost entirely from his review of academic materials provided to him by the lawyers involved in this case.

4

Even if we were to overlook Dr. Weiland's qualifications on the precise issue in this case, we find no abuse of discretion in the district court's exclusion of his testimony on the ground that he did not establish a reliable basis for his opinion. On the record before us, Dr. Weiland did not have a legally sufficient basis for his belief that the specific Marlex Mesh implanted into Liner was defective. Dr. Weiland's reasoning consisted of the following: the Marlex Mesh implanted into Liner became fragmented; therefore this Marlex Mesh was defectively manufactured. Yet Dr. Weiland did not perform any tests to reach this conclusion. In fact, he never inspected the product at all. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593, 113 S.Ct. 2786, 2796 (1993) (noting that a "key question" in assessing proffered scientific testimony is whether it can be and has been tested).[3] Thus, the district court did not abuse its discretion when it found that this proffered testimony was too unreliable to be presented to the jury.

## II.

Liner next challenges the district court's decision to grant the defendant's Rule 50 motion. In reviewing orders granting Rule 50 motions, we view the evidence in the light most favorable to the non-movant, and will affirm if the facts and inferences point so strongly and overwhelmingly against the non-movant that reasonable jurists could not arrive at a contrary conclusion. See Guilbeau v. W.H. Henry Co., 85 F.3d 1149, 1161 (5th Cir. 1996).

The plaintiff argues that, even without the testimony of Dr. Weiland, the jury had before it sufficient evidence to render a reasoned verdict in her favor. In making this argument, Liner principally relies upon the testimony of Dr. Eric Wyble, the surgeon who performed many of the surgeries upon Liner. In his jury testimony, Dr. Wyble offered his opinion that the Marlex Mesh implanted into Liner did not stay inert.

---

[3]We have already rejected plaintiff's argument that Daubert is inapplicable when the scientific testimony at issue is not one involving "hard science." See Moore, 151 F.3d at 275 n.6.

However, "[a] mere scintilla of evidence is insufficient to present a question for the jury." Scott v. University of Mississippi, 148 F.3d 493, 504 (5th Cir. 1998) (quoting Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), overruled on other grounds, Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997) (en banc)). To recover, Liner must show that "[t]he product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications." MISS. CODE. ANN. § 11-1-63. We agree with the district court that this testimony is insufficient to persuade a reasonable juror that the Marlex Mesh implanted in Liner in 1977 was defective when it left the control of the manufacturer. Dr. Wyble did not testify to how Marlex Mesh was constructed or the material used to make it. He did not testify that, as compared to other Marlex Meshes made by defendant Davol, the Marlex Mesh implanted into Liner deviated in some significant way. Therefore, he could establish a manufacturing defect in the Marlex Mesh. Without such testimony, the district court was correct to grant defendant's Rule 50 motion.

### CONCLUSION

For the reasons set forth above, we AFFIRM the district court's decisions to exclude expert testimony and to dismiss plaintiff's claim as a matter of law.